United States District Court
Southern District of Texas
**ENTERED**
May 31, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DENARD MCCLAIRNE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-03334 |
| | § | |
| **TITLEMAX OF TEXAS, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

In July 2022, Plaintiff Denard McClairne took out a loan from TitleMax of Texas, Inc. ("TitleMax"), using the title to his 2011 Buick Enclave as collateral. Before making any payments on the loan, McClairne sent a dispute notice to TitleMax claiming that the loan agreement contained discrepancies, and as a result, he refused to make payments. TitleMax reported the default to the credit agencies, which negatively impacted McClairne's credit rating, and eventually TitleMax repossessed the car. McClairne filed this *pro se* lawsuit against TitleMax[1] asserting violations of various consumer protection laws.

Pending before the Court is TitleMax of Texas, Inc.'s 12(b)(1) and 12(b)(5) Motion to Dismiss Plaintiff's Amended Original Complaint and Motion to Compel Arbitration. (Dkt. No. 11). Also pending before the Court is Defendant TitleMax of Texas, Inc.'s

---

[1] TitleMax of Texas, Inc. is incorrectly named in this lawsuit as simply "TitleMax." (*See* Dkt. No. 11 at 1). Without addressing any misnomer arguments, the Defendant will be referred to as "TitleMax" for purposes of this Order.

Motion to Strike Plaintiff's "Sur-Reply," (Dkt. No. 23). After careful consideration, the Court **GRANTS** the Motion to Dismiss and Compel Arbitration, (Dkt. No. 11), and **DENIES** the Motion to Strike, (Dkt. No. 23).

I.  **BACKGROUND**[2]

According to the complaint, McClairne took out an auto title loan from TitleMax in July 2022. (Dkt. No. 9 at ¶ 4.1). As part of the loan application process, McClairne provided his social security number. (*Id.* at ¶¶ 4.1, 4.2). He signed the loan agreement and tendered the title to his 2011 Buick Enclave. (*Id.* at ¶¶ 4.3, 4.4).

The July 2, 2022 Credit Services Contract and Security Agreement (the "CSO Contract") signed by McClairne, (Dkt. No. 11-1 at 8), provides, in relevant part:

> [TitleMax] and [McClairne] agree that any party may arbitrate or demand arbitration of any Dispute unless [McClairne] opt[s] out or the law does not allow it.
>
> \*\*\*
>
> "*Dispute*" has a broad meaning. "*Dispute*" includes all claims and disagreements related to [the] application, this Contract, the Vehicle, the [TitleMax] Services, or [McClairne's] relationship with [TitleMax]. It includes claims and disagreements about any prior applications and agreements. It includes extensions, renewals, refinancings, and payment

---

[2] For purposes of this Order, the Court accepts all factual allegations in the Complaint as true and views them in the light most favorable to the nonmovant, McClairne. *See White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).

In the Fifth Circuit, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted). The Court may dismiss for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Accordingly, the Court will consider the exhibits attached to Defendant's Motion to Dismiss and Compel Arbitration, (Dkt. No. 11).

>plans. It includes claims related to collections, privacy, and customer information. It includes claims and disagreements that usually would be resolved in court.

(*Id.* at 5–6, 8) (emphasis in original).

On August 1, 2022, McClairne faxed what he calls a "Billing Dispute Notice" to TitleMax, asserting that "major discrepancies exist[] within" the CSO Contract. (Dkt. No. 9 at ¶ 4.5). TitleMax did not respond to this notice, nor provide any indication that it was investigating the claims. (*Id.* at ¶ 4.6). On August 12, McClairne sent a "cease-and-desist notice" to TitleMax, demanding that TitleMax provide a claim number for his dispute, commence an investigation on his claim, stop all attempts to collect amounts allegedly owed until the resolution of the dispute, and terminate all attempts to repossess his vehicle. (*Id.* at ¶ 4.7). Shortly after, TitleMax repossessed McClairne's car and reported the payment default to the major credit bureaus, which negatively impacted his credit history. (*Id.* at ¶ 4.8).

McClairne filed this lawsuit against TitleMax on September 23, 2022, asserting a variety of claims including fraud, breach of contract, and violations of unspecified consumer rights. (Dkt. No. 1 at ¶ 5.1). McClairne amended his complaint on November 4, 2022, (Dkt. No. 9), and TitleMax moved to enforce the arbitration clause contained in the loan agreement. (Dkt. No 11). McClairne responded, (Dkt. No. 19), and TitleMax filed a reply, (Dkt. No. 20).[3]

---

[3] McClairne also filed a sur-reply without seeking leave from the Court to do so, (Dkt. No. 22), which TitleMax has moved to strike, (Dkt. No. 23). The Court need not reach the merits of this Motion as the issue is now moot.

## II.     DISCUSSION

TitleMax moves to dismiss the claims asserted in McClairne's amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure alleging that they are subject to a binding arbitration provision thereby depriving the Court of jurisdiction. (Dkt. No. 11 at 3–6). Alternatively, TitleMax argues that McClairne's amended complaint should be dismissed under Rule 12(b)(5) due to insufficient service of process. (*Id.* at 6). The Court finds that McClairne's claims are subject to a binding and enforceable arbitration agreement, and therefore does not reach the Rule 12(b)(5) arguments.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id.* (citations omitted). Under the Federal Arbitration Act ("FAA"), the jurisdiction of federal courts is limited when parties have agreed in writing to arbitrate. *See* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement").

A party who is not a signatory to an arbitration agreement generally cannot be compelled to submit a dispute to arbitration. *See Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 333 (5th Cir. 2010). However, when an arbitration agreement exists, a court must "keep in mind the strong federal policy favoring arbitration." *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990). Arbitration "should not be denied unless it can be said with positive assurance that an arbitration

4

clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* (internal quotation marks omitted).

Determining whether a party should be compelled to arbitrate claims requires a two-step inquiry. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Step one focuses on "contract formation—whether the parties entered into *any arbitration agreement at all*." *Id.* (emphasis in original). Step two "involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Id.* (emphasis in original). The Court will discuss each step in turn.

### A.  THE PARTIES ENTERED INTO AN ARBITRATION AGREEMENT

TitleMax argues that the Parties entered into a valid agreement, the CSO Contract, which contained an arbitration clause. (Dkt. No. 11 at 4–5). McClairne responds that the CSO Contract is "null and void" because TitleMax "has committed fraud[.]" (Dkt. No. 19 at 1). In reply, TitleMax argues that allegations of fraud as to an entire agreement do not invalidate an arbitration clause. (Dkt. No. 20 at 2–3). The Court agrees with TitleMax.

Whether the Parties entered into a valid arbitration agreement is controlled by state contract law. *See Gezu v. Charter Comms.*, 17 F.4th 547, 552–53 (5th Cir. 2021). Here, the CSO Contract contains a choice-of-law provision selecting Texas's substantive law to govern, (Dkt. No. 11-1 at ¶ 26), and no Party disputes that Texas law applies when determining the agreement's validity. "The elements needed to form a valid and binding contract [in Texas] are (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration." *Speedemissions, Inc. v. Bear Gate, L.P.*, 404 S.W.3d 34, 43 (Tex.

5

App.—Houston [1st Dist.] 2013, no pet.). "Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam). In this case, it is undisputed that both Parties signed the CSO Contract. (*See* Dkt. No. 11-1 at 8). A valid contract, which contains an arbitration clause, was formed.

The Supreme Court has held that the FAA requires that claims of fraud in the inducement of the contract generally must be resolved by an arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–46, 126 S.Ct. 1204, 1208–09, 163 L.Ed.2d 1038 (2006). While the FAA permits federal courts to hear claims regarding fraud in the inducement of the arbitration clause itself, *id.* at 445, 126 S.Ct. at 1208, that is not the situation here. Instead, McClairne argues that the arbitration clause "is no longer valid" due to alleged fraud occurring after the formation of the contract. (Dkt. No. 19 at 1). Accordingly, the CSO Contract is valid, and the arbitration agreement remains enforceable.

### B.  MCCLAIRNE'S CLAIMS ARE COVERED BY THE ARBITRATION AGREEMENT

Turning to the second step in the analysis, the Court finds that this dispute falls squarely within the arbitration agreement. TitleMax argues that McClairne's claims "arise directly out of the parties' CSO Contract and Plaintiff's dealings with TitleMax," which are within the CSO Contract's definition of covered "Disputes[.]" (Dkt. No. 11 at 5–6). McClairne does not directly respond to this argument. (*See* Dkt. No. 19).

When an arbitration clause exists in a contract, there is a presumption in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). "Such a presumption is particularly applicable where the clause is [] broad[.]" *Id.* And any "[d]oubts should be resolved in favor of coverage." *Id.*

In this case, the CSO Contract specifically states that "Disputes" are covered by the arbitration clause, and the term "Disputes" is given a "broad meaning." (Dkt. No. 11-1 at 5–6). Moreover, the dispute in this case arises directly out of the Parties' dealings under the CSO Contract. (*See* Dkt. No. 9 at 2–4). Accordingly, McClairne's claims are covered by the arbitration agreement.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** TitleMax of Texas, Inc.'s 12(b)(1) and 12(b)(5) Motion to Dismiss Plaintiff's Amended Original Complaint and Motion to Compel Arbitration, (Dkt. No. 11), and **DENIES** Defendant TitleMax of Texas, Inc.'s Motion to Strike Plaintiff's "Sur-Reply," (Dkt. No. 23). This action is **DISMISSED WITHOUT PREJUDICE** in favor of arbitral proceedings to be instituted by the Parties as provided for in the CSO Contract.

It is SO ORDERED.

Signed on May 30, 2023.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**